

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

APR 2 3 2019

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
MC

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Facebook, 1601 Willow Road, Menlo Park, CA 94025; re: Facebook user #100032410606683 | ) ) ) |

Case No.

## 19MJ9269

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Northern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846 | Possession of a Controlled Substance with the Intent to Distribute; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Task Force Officer Jon Dellinger

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Jon Dellinger, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   4/22/19

_____
*Judge's signature*

City and state:   El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*



**AFFIDAVIT**

I, Jon Dellinger, being duly sworn, declare and state:

**INTRODUCTION**

1.     This affidavit supports an application to search the following Facebook account associated with Mario Orta ("ORTA"):

a.     "Bart Mario" Facebook Account ID # 100032410606683 ("**Target Account**") as more particularly described in Attachment A, incorporated herein.

2.     Based on the information below, I have probable cause to believe that the **Target Account** described in Attachment A constitutes evidence, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code, Section 841 & 846, Possession of a Controlled Substance with Intent to Distribute Methamphetamine and Heroin and conspiracy to commit the same.

3.     The evidence to be searched for and seized is described in Attachment B, incorporated herein.   The **Target Account** is currently in the possession of Facebook LLC, Security Department- Custodian of Records, located at 1601 Willow Road, Menlo Park, CA 94025.

4.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug trafficking, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this affidavit, or have reviewed reports created by them. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Account**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

5.      I am a peace officer in the State of California and have been since February 2017. I am currently employed as a Detective for the Brawley Police Department and assigned as a Task Force Officer (TFO) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) Assistant Special Agent in Charge (ASAC), Calexico, California Imperial Valley Border Enforcement Security Task Force (IV-BEST). This group is a multi-agency task force in Imperial, California that focuses on the organized trafficking of narcotics through and along the Southwest Border. My primary duties involve the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code.

6.      I have participated in and conducted investigations of violations of various State and Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotics offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18 of the United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine, and the arrest of individuals who have laundered proceeds emanating from those illegal activities.

7.      These investigations often resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs. Through these investigations and my training, I have become familiar with the operations of illegal international

Drug Trafficking Organizations (DTOs) in various parts of the world, including Mexico.

8.     I have conducted investigations concerning the identification of co-conspirators through the use of social media, telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested that later cooperated with the government.

9.     Based on my experience, I am familiar with the methods used in narcotics trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers about their experiences, and the results of their investigations and interviews. I have become knowledgeable about the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers and distributors. I know that narcotics traffickers and distributors often use various residences, dwellings, storage units, and other structures to store and conceal their narcotics for the purpose of future distribution. Additionally, I also know narcotics traffickers and distributors store and conceal narcotics in locations separate from their immediate dwelling to avoid direct possession and thwart law enforcement efforts.

10.     In my role investigating DTOs, I have examined many Facebook profile pages, and I have learned that DTOs often use social media sites to communicate in an effort to bypass law enforcements attempts to uncover their criminal activity. Based on my training, experience, and communications with other law enforcement officers, I have learned specific techniques to identify suspects and associates even when they use fictitious names or aliases on social

media sites.

## **BACKGROUND**

11.   Facebook is a corporation headquartered in Menlo Park, California. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12.   Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

13.   Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.   Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14.   Facebook users can select different levels of privacy for the

communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

15.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

16.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will

include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

17.    Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

18.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

19.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

20.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

21.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses,

1    investigators can understand the chronological and geographic context of the
2    account access and use relating to the crime under investigation. Such information
3    allows investigators to understand the geographic and chronological context of
4    Facebook access, use, and events relating to the crime under investigation.
5    Additionally, Facebook builds geo-location into some of its services. Geo-location
6    allows, for example, users to "tag" their location in posts and Facebook "friends"
7    to locate each other. This geographic and timeline information may tend to either
8    inculpate or exculpate the Facebook account owner. Last, Facebook account
9    activity may provide relevant insight into the Facebook account owner's state of
10   mind as it relates to the offense under investigation. For example, information on
11   the Facebook account may indicate the owner's motive and intent to commit a
12   crime (e.g., information indicating a plan to commit a crime), or consciousness of
13   guilt (e.g., deleting account information in an effort to conceal evidence from law
14   enforcement).

15       22.    Therefore, the computers of Facebook are likely to contain all the
16   material described above, including stored electronic communications and
17   information concerning subscribers and their use of Facebook, such as account
18   access information, transaction information, and other account information.

19                    **FACTS SUPPORTING PROBABLE CAUSE**

20       23.    On January 26, 2019, while using an undercover (UC) Facebook
21   account, I observed **Target Account's** Facebook profile and observed that ORTA
22   posted a story with a photograph of a glass water bong used for smoking
23   methamphetamine. Over the photograph, ORTA posted "last chance to... Buy a
24   sack and u could win me.. Raffle will be on Wednesday." Based on my training
25   and experience, I interpreted ORTA's post to refer to selling methamphetamine or
26   some other federally controlled substance.

24.     On January 29, 2019, I executed a state search warrant on a black Alcatel cellphone belonging to Laura ARREOLA. I believe that ARREOLA was ORTA's girlfriend at the time. During the search of the cell phone, I observed the following messages from January 26, 2019, between ARREOLA's cell phone and an unknown individual identified in ARREOLA's phone as Jessica:

| FROM | TO | MESSAGE |
|---|---|---|
| Jessica | Arreola | Is this bart[1] |
| Arreola | Jessica | This is Laura |
| Jessica | Arreola | My bad this is jessica i was try n to get ahold of bart im try n to get something .. |
| Arreola | Jessica | Jessica? |
| Arreola | Jessica | Hey it's bart |
| Arreola | Jessica | What up... |
| Jessica | Arreola | Im try n to get something do you have |
| Arreola | Jessica | Yeah how much |
| Jessica | Arreola | ? Zip |
| Arreola | Jessica | Yeah |
| Jessica | Arreola | $? |
| Arreola | Jessica | $120 |
| Jessica | Arreola | Ok i want one for sure but can you give me a few cuz im in the middle of something ill hit u up in like 10 or 15 mins cool |
| Arreola | Jessica | Cool |

Through my training and experince, I know that the phrase "Zip" is slang for an ounce of narcotics. I also know that the current street sales amount for one ounce of methamphetamine is between $100 and $150 dollars depending on the seller and purity.

25.     On January 29, 2019, while using an undercover (UC) Facebook account, I observed **Target Account's** Facebook profile and noted that ORTA posted a story with a photograph of a white iPad. In writing over the photo were the words, "I PAD II RAFFEL. BYE A SACK AND U COULD WIN!! Raffel is on Thursday.31." Based on my training and experience, along with ORTA's prior Facebook posts, I interpreted ORTA's post to refer to selling federally controlled

---

[1] "Bart" is ORTA's nickname.

1  substances and enticing additional sales by raffling off an iPad.

2  26.    On January 29, 2019, at approximately 9:47 p.m., law enforcement
3  officers executed a state search warrant at the Brawley Inn, Room 212. Upon
4  entering the room, law enforcement immediately encountered ARREOLA sitting
5  on the floor in the middle of the hotel room. Law enforcement officers also
6  observed two Hispanic male inside the room. One Hispanic male, later identified
7  as ORTA, was running into the room from the bathroom. Law enforcement
8  detained and handcuffed all occupants.

9  27.    Before searching the hotel room, law enforcement officers scanned it
10 with a Human and Narcotics Detector Dog (HNDD). The HNDD alerted near the
11 bathroom and the bed. In the bathroom, law enforcement found five plastic bags of
12 a white crystalline substance, which appeared to be methamphetamine, and one
13 plastic bag with a dark tar-like substance, which appeared to be heroin. The bags
14 were found in the toilet, along with feces. The toilet appeared to be clogged, which
15 prevented the narcotics from being flushed down the toilet.

16 28.    Officers also found three plastic bags containing a dark, tar-like
17 substance, which appeared to be heroin in a coffee filter holder on the bathroom
18 counter.

19 29.    Additionally, officers located a blue backpack tucked between the
20 wall and a nightstand in the main room. Inside the backpack, officers found three
21 plastic bags containing a white crystalline substance, believed to be
22 methamphetamine.

23

24 30.    The eight bags of methamphetamine weighed approximately 1.35
25 kilograms (3.64 pounds), and the four packages of heroin weighed approximately
26 12.1 grams of heroin. ARREOLA and ORTA were placed under arrest and charged
27 in a federal criminal complaint. *See* 19-cr-676-BAS. The other Hispanic male was

28

arrested, but charges were not filed against him.

31.     In my training and experience, I have learned that individuals engaged in drug sales often use their social media for months, if not years, to conspire, plan and coordinate their criminal activities and that social media platforms retain evidence of their crimes such as communications, photographs, videos, contact information of co-conspirators, location data, travel arrangements, and financial data that evidence criminal activities. In particular, I know that Facebook accounts of individuals involved in drug trafficking often contain:

a.     Communications, records, posts, and attachments tending to discuss, depict, or establish the possession, purchase, sales, or receipt of narcotics;

b.     Communications, records, posts, and attachments tending to identify individuals involved in narcotics activities;

c.     Communications, records, posts, and attachments tending to discuss, depict, or establish the ownership, possession, dominion and control of the **Target Account**; and

d.     Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the **Target Account**.

32.     Based upon my experience and investigation in this case, I believe that ORTA and ARREOLA, as well as other persons as yet unknown, were involved in an on-going conspiracy to distribute methamphetamine, heroin, or some other prohibited narcotics. Further, based on my investigation of drug distribution conspiracies, telephone contact with drug distribution co-conspirators can begin months or weeks before drugs are distributed to a consumer. Communications can then continue through the time a co-conspirator is arrested,

particularly if a co-conspirator is not aware of the arrest. I am requesting records from December 29, 2019 up to and including January 30, 2019, because I believe I will discover further evidence of ORTA's and ARREOLA's possession and trafficking of narcotics.

## PRIOR ATTEMPTS TO OBTAIN DATA

33.     The United States has viewed and downloaded posts, photographs, and information from public portions of the **Target Account**, but it has not sought a warrant to search the **Target Account** and has not yet seen the entirety of the **Target Account**, including its Facebook Messenger exchanges.

## GENUINE RISKS OF DESTRUCTION

34.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.

## PROCEDURES FOR SEARCHING ELECTRONICALLY STORED INFORMATION

35.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not.  It would be inappropriate and impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook.  The impact on Facebook's business would be disruptive and severe.

36.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Facebook account, as described in Attachment B. In order to accomplish the objective of the search warrant with a

minimum of interference with the business activities of Facebook], to protect the privacy of Facebook subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow Facebook to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

37. Analyzing the data to be provided by Facebook may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. Facebook does not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

38.     Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the Facebook, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

39.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

40.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

//
//
//
//
//
//
//
//
//

1

## **CONCLUSION**

2

41.    Based on the foregoing, there is probable cause to believe that the

3

items identified in Attachment B have been used in the commission of a crime and

4

constitute evidence, fruits, and instrumentalities of violations of Title 21, United

5

States Code, Sections 841 and 846 will be found at the premises to be searched as

6

provided in Attachment A.

7

I swear the foregoing is true and correct to the best of my knowledge and

8

belief.

9

10

11

Jon Dellinger

Task Force Officer, HSI

12

13

Subscribed and sworn to before me this 22nd day of April, 2019.

14

15

16

17

RUTH BERMUDEZ MONTENEGRO

18

United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

Page 15

# **ATTACHMENT A**

This warrant applies to information following Facebook account associated with Mario Orta:

"Bart Mario," Facebook Account ID # 100032410606683 ("**Target Account**")

that is stored at premises owned, maintained, controlled, or operated by Facebook LLC, Security Department- Custodian of Records, located at 1601 Willow Road, Menlo Park, CA 94025.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT B**

**I.    Service of Warrant**

The officer executing the warrant shall permit Facebook, as custodian of the computer files described in Section II below, to locate the files relevant to Attachment A, incorporated herein, and copy them onto removable electronic storage media and deliver the same to the officer or agent in the manner set forth in the Affidavit, incorporated herein.

**II.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the account listed in Attachment A:

a. All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

Page 17

d. All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; comments; tags; and information about the user's access and use of Facebook applications;

e. All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f. All "check ins" and other location information;

g. All IP logs, including all records of the IP addresses that logged into the account;

h. All past and present lists of friends created by the account;

i. The types of service utilized by the user;

j. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number); and

k. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

//

**III.  Information to be seized by the government**

The search of the data supplied by Facebook pursuant to this warrant will be conducted by HSI as provided in the "Procedures For Electronically Stored Information" of the Affidavit submitted in support of this search warrant and will be limited to the time periods of **December 29, 2018, up to and including January 30, 2019.**

The search and seizure of the data supplied by Facebook pursuant to this warrant will also be limited to:

   a. Communications, records, posts, and attachments tending to discuss, depict, or establish the possession, purchase, sales, or receipt of narcotics;

   b. Communications, records, posts, and attachments tending to identify ORTA, ARREOLA, and any other co-conspirators involved in the activities in III(a);

   c. Communications, records, posts, and attachments tending to discuss, depict, or establish the ownership, possession, dominion and control of the **Target Account**; and

   d. Communications, records, and attachments that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users of the subject accounts;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846, Possession of a Controlled Substance with Intent to Distribute and conspiracy to commit the same.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.

*ORDER OF DETENTION PENDING TRIAL*

Rosendo PLACENCIA-Abija

Case Number:   19MJ 9267

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing was held on 4/23/2019 . Defendant was present and was represented by counsel. I conclude by a preponderance of the evidence the defendant is a flight risk and order the detention of the defendant pending trial in this case.

## FINDINGS OF FACT

I find by a preponderance of the evidence that:

☑ The defendant is not a citizen of the United States or lawfully admitted for permanent residence. The defendant, at time of the charged offense, was in the United States illegally.

☐ The defendant has no significant contacts in the United States.

☐ The defendant has no resources in the United States from which he/she might make a bond reasonably calculated to assure his/her future appearance.

☑ The defendant has a prior criminal history and/or immigration history.   Conviction for Felony 1326 offense in 5/02

☑ The defendant lives and/or works in Mexico.   5 prior deportations from U.S.

☐ The defendant is an amnesty applicant but does not have substantial ties in the United States and has substantial ties to Mexico.

☐ There is a record of prior failure to appear in court as ordered.

☐ The defendant attempted to evade law enforcement contact by fleeing or concealing him or herself from law enforcement.

☐ The defendant is facing a maximum of _____ months imprisonment.

☐ _____

The Court incorporates by reference the material findings of the Pretrial Services Agency which were reviewed by the Court at the time of the hearing in this matter, except as noted in the record.

## CONCLUSIONS OF LAW

1. There is a serious risk that the defendant will flee.
2. No condition or combination of conditions will reasonably assure the appearance of the defendant as required.

## DIRECTIONS REGARDING DETENTION

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceedings.

## APPEALS AND THIRD PARTY RELEASE

IT IS ORDERED that should an appeal of this detention order be filed with the District Court, it is counsel's responsibility to deliver a copy of the motion for review/reconsideration to Pretrial Services at least one day prior to the hearing set before the District Court.

IT IS FURTHER ORDERED that if a release to a third party is to be considered, it is counsel's responsibility to notify Pretrial Services sufficiently in advance of the hearing before the District Court to allow Pretrial Services an opportunity to interview and investigate the potential third party custodian.

Dated: 4/23/2019

FILED
APR 2 3 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Honorable Ruth Bermudez Montenegro, U. S. Magistrate Judge